# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION NO. **5:94-cr-0004-1-TES** |
| THELRON DEBRAY COLEMAN, | |
| *Defendant.* | |

## ORDER DENYING MOTION FOR RECONSIDERATION

Before the Court is Defendant Thelron Coleman's Motion for Reconsideration [Doc. 190] of the Court's Order Denying his Motion for Compassionate Release [Doc. 189]. As explained in further detail below, because Defendant Coleman fails to demonstrate that that the Court erred, the Court **DENIES** Defendant's Motion.

## BACKGROUND

On November 2, 2024, Defendant filed a motion asking that the Court reduce the life sentence he received from this Court in 1995 to time served, effectively setting him immediately free. [Doc. 179, p. 1]. To be sure, Defendant Coleman accurately recited that he received his life sentence "based on the underlying offense of being a felon in possession of a gun at the age of 25." [*Id.*] But, there is much more to this case than a

criminal defendant receiving a life sentence for nothing more than being a felon in possession of a handgun. Much more.

While the Court certainly doesn't blame Defendant's attempt to put his story to the Court in the best possible light to him, the Court isn't required to accept that one-sided view. No, the Court is bound by facts – and the facts in this case aren't good. In fact, they're heinous. Rather than rehash those facts in excruciating detail, the Court notes that this voluminous docket well covers exactly what Defendant to his many victims. But, just to summarize, the Court adopts Magistrate Judge Weigle's brief synopsis:

> Between the time of his indictment in January 1994, and this Court's entry of judgment in September 1995 upon Movant's plea of guilty (Doc. 58), Movant escaped from the Laurens County Jail twice, and from the Bibb County Jail once. (Doc. 80, pp. 3–4). Movant escaped from the Bibb County Jail by "hiding in a laundry cart," and the record indicates that Movant left behind a note reading "Ha-ha-ha, Houdini did it again." (Doc. 80, p. 17). Movant's escapes were accompanied by multiple instances of motor vehicle theft, sometimes on threat of violence. (Doc. 80, pp. 7–11). Based on his ACCA violation, Movant received a heightened penalty at sentencing. (Doc. 58, pp. 1–2; Doc. 59, p. 4; Doc. 80, pp. 16–17). The Court also departed upward from the sentencing guidelines based on Movant's post-indictment escapes and associated conduct. See (Doc. 59, pp. 4–5).

[Doc. 113, p. 1-2].

When Judge Owens sentenced Defendant to life in prison, he noted the following:

> Well, Mr. Coleman, your guideline range, as you know from going over the report, starts out at 235 to 293 months. That was based on an offense level of 33 and a criminal history category of VI.

There are factors identified, as you know, in the report and in the government's motion that warrant an upward departure because of the inadequacy of criminal history.

Based upon the severity of your prior criminal history and your continuing violent criminal conduct, the Court is going to depart from the original guideline range pursuant to Section 4A1.3 of the sentencing guidelines.

*Since 1982, you have received eleven convictions resulting in a total of twenty-four criminal history points. In addition, the offense that is before the Court occurred while you were on escape status and involved an additional offense of carjacking. Since being charged with the instant offense, you have continued your violent criminal behavior by escaping on three separate occasions and continuing to commit violent crimes, including five carjackings.*

Therefore, the Court is moving incrementally down the sentencing table to offense level 37. The Court, in doing so, has given careful consideration to offense levels 34 through 36, but concluded that those levels do not adequately reflect your criminal conduct. A criminal history category of VI and an offense level of 37 provides for a guideline range of 360 months up to life imprisonment. After arriving at that range, the Court then sentences you to the Bureau of Prisons for life imprisonment without parole. Since you are serving unrelated state sentences, the Court imposes this term to run consecutive to the state sentences you are now serving; that is, you must finish those before this sentence begins.

[Doc. 59, pp. 4-6 (emphasis added)]. Suffice it to say, Defendant Coleman is not the typical nonviolent felon who happened to possess a firearm.

On May 27, 2025, this Court exercised its considerable discretion and denied Defendant's Motion for Compassionate Release [Doc. 189]. The Court found that Defendant did not meet the statutory requirements of §3582(c)(1)(A), primarily because the Court found, among other things, that Defendant was still dangerous. On June 7, 2025, Defendant Coleman filed this Motion for Reconsideration [Doc. 190] asking the

Court to determine as a matter of law that he is serving "an unusually long sentence" which suffices to serve as an "extraordinary and compelling reason" to modify his sentence under USSG §1B1.13. [Id., pp. 1-2]. Defendant also requests the Court to hold a hearing to "hear from Mr. Coleman and meet the person he is today." [Id., p. 3].

## DISCUSSION

Before addressing the merits of Defendant Coleman's Motion, the Court first sets out the law that will guides its analysis.

### A.    Legal Standard

"Motions for Reconsideration shall not be filed as a matter of routine practice," and "reconsideration of a previous order is an extraordinary remedy to be employed sparingly." LR 7.6, MDGa; *Goolsby v. Astrue*, No. 5:07-CV-183 (CAR), 2009 WL 3781354, at *1 (M.D. Ga. Nov. 10, 2009) (quoting *Groover v. Michelin N. Am., Inc.*, 90 F. Supp. 2d 1236, 1256 (M.D. Ala. 2000)). Such motions are appropriate only if the movant demonstrates that "(1) there has been an intervening change in the law, (2) new evidence has been discovered that was not previously available to the parties at the time the original order was entered, or (3) reconsideration is necessary to correct a clear error of law or prevent manifest injustice." *Bryant v. Walker*, No. 5:10-CV-84 (CAR), 2010 WL 2687590, at *1 (M.D. Ga. July 1, 2010) (quoting *Wallace v. Ga. Dep't of Transp.*, No. 7:04-cv-78, 2006 WL 1582409, at *2 (M.D. Ga. June 6, 2006)). A motion for reconsideration may not be used to relitigate old matters or reargue settled issues. *See*

*id.*; *Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012). Nor should a motion for reconsideration be used "as an opportunity to show the court 'how it could have done it better.'" *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1259 (N.D. Ga. 2003) (quoting *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 816 F. Supp. 1557, 1560 (N.D. Ga. 1995)).

### B.    Defendant Coleman's Motion for Reconsideration

Defendant Coleman moves for reconsideration, arguing that the Court should have addressed his claim "on its merits" that he meets the criteria for compassionate release because his "unusually long sentence" is an "extraordinary and compelling" reason. [Doc. 190, p. 2]; *see* USSG §1B1.13(b)(6). Additionally, Defendant asks the Court to reconsider its finding that he remains a danger to the community. In Defendant's words: "Taken together, there is not a single piece of evidence that Mr. Coleman remains a danger to the community *today*, approximately thirty years after his offenses." [*Id.*, p. 3.] Let's start with his latter request first.

As the Court noted above, Defendant's request for a hearing for the Court to hear directly from Defendant Coleman is the textbook example of giving the Court "an opportunity to show the court 'how it could have done it better.'" *Bryan*, 246 F. Supp. at 1259. Defendant offers no new evidence, no intervening change in the law, and no clear error of law. *Bryant*, 2010 WL 2687590, at *1. While the Court understands and accepts that Defendant Coleman and his counsel may be upset and disagree with the Court's

decision, asking the Court to hold a hearing, when no hearing was previously requested, offers no legal reason to reconsider.

As the Court noted in its Order, it considered every single piece of paper that Defendant offered as well as the violent nature of his offenses, his characteristics and history as well as the factors found at §3553(a). [Doc. 189]. The Court specifically noted the Defendant's rehabilitation efforts and commended him for them. But, after considering the entirety of the record, the Court exercised its considerable discretion and decided that Defendant was still a danger to the community, denying his petition for an immediate release. And, of course, the Eleventh Circuit recently reiterated that when considering § 3582(c)(1)(A) motions, district courts aren't required to hold an evidentiary hearing and reiterated that the decision of whether to reduce a defendant's sentence lies within the sound discretion of the district court. *United States v. Castro*, 2025 WL 884025, at *2 (11th Cir. Mar. 21, 2025).

As for Defendant's request that the Court address his claims under §1B1.13(b)(6) "on its merits," the Court has no requirement to do so.

To be fair, the Court concedes that its statement that it "concurs with the prior finding and fully intends to require the defendant to serve his sentence as previously imposed" could be read that it adopted Judge Lawson's previous findings that Defendant did not have an extraordinary and compelling reason for a sentence reduction in 2021. [Doc. 164]. There, Judge Lawson found that Defendant's COVID-

based reasons were not extraordinary and compelling when he denied that previous

motion [Doc. 164] that the Eleventh Circuit later affirmed [Doc. 174 and 175]. Of course,

this case wasn't based on anything to do with COVID and it would make little sense for

the Court to adopt that portion of the previous order.

However, the Court was referring to a different part of Judge Lawson's order. In

his 2021 Order, Judge Lawson made the following findings:

> In this case, the Court has also carefully and completely reviewed and
> considered the information submitted in defense and government
> motions/responses and considered the applicable factors set forth in 18 U.S.C. §
> 3553(a) — specifically the nature and circumstances of the instant offense and the
> need to avoid unwarranted disparity. The Court notes, just as the sentencing
> judge did in this case, that the instant offense occurred while the defendant was
> in escape status and involved an additional offense of Carjacking; after
> committing the instant offense, the defendant continued his criminal behavior by
> escaping on three separate occasions and committed violent crimes including
> five Carjackings. …
>
> After considering the enumerated facts above and the information in the first
> paragraph of this order, the Court finds the defendant has not provided
> "extraordinary and compelling" reasons to warrant the Court ordering a
> compassionate release in this case. The Court notes for the record that the
> defendant is a danger to the community and this Court would not order his
> release even if "extraordinary and compelling" reasons for granted (sic) a
> compassionate release were identified.

[Doc. 164, p. 3].

So, when the Court concurred "with the prior finding," it specifically concurred

with Judge Lawson's findings that Defendant Coleman remained a "danger to the

community" and that he would not "order his release even if 'extraordinary and

compelling' reasons for granted (sic) a compassionate release were identified." [*Id.*]. The

Court was not finding that there were no extraordinary and compelling reasons based on Defendant's previous COVID-centered motion.

To be clear, the Court assumed, because it didn't need to decide, that Defendant Coleman had such reasons. However, after the Court "reviewed the motion on its merits," "carefully considered the information submitted in defense and government motions/responses," considered "the applicable policy statements issued by the Sentencing Commission and the applicable factors set forth in 18 U.S.C. §§ 3142(g) and 3553(a) – specifically the nature and characteristics of the instant offense, involving a firearm, and the defendant's history and characteristics including his history of escapes and violent criminal behavior involving multiple carjackings," the Court found he was still a danger to the community so that he did not satisfy each requirement of 3582(c)(1)(A). [Doc. 189]. Again, the Court specifically considered the Defendant's "youth at the time of the offense, non-terminal health issues, length of time served and rehabilitative efforts during incarceration." [*Id.*]

Moreover, the Court agreed with Judge Lawson that even if Defendant had sufficient extraordinary and compelling reasons, it would not exercise its discretion and grant him relief due to his danger to the community. And, as the Court noted in its previous order, the Court echoes its previous determination that when it considers the factors set out in §§ 3142(g) and 3553(a), it again does not find relief in this case to be appropriate.

To recap, "[w]hether [Defendant] established extraordinary and compelling reasons for release based on … [his] rehabilitation efforts while incarcerated is immaterial because the district court did not abuse its discretion in finding that the statutory sentencing factors did not warrant early release, and that finding alone was sufficient to preclude relief. *Castro*, 2025 WL 884025, at *2 (internal citations omitted).

<u>CONCLUSION</u>

Accordingly, because Defendant Coleman fails to demonstrate that "reconsideration is necessary to correct a clear error of law," the Court **DENIES** Defendant Coleman's Motion for Reconsideration [Doc. 190].

**SO ORDERED**, this 12th day of June, 2025.

TILMAN E. SELF, III, JUDGE
UNITED STATES DISTRICT COURT